## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL K. LEE,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          2:12cv1033
                                   )          **Electronic Filing**
DELTA AIR LINES, INC.              )
                                   )
          Defendant.               )

### MEMORANDUM OPINION

August 5, 2014

### I.    INTRODUCTION

   Plaintiff, Michael K. Lee ("Lee" or "Plaintiff") filed an Amended Complaint alleging

racial discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*

and the Pennsylvania Human Rights Act, 43 Pa. Cons. Stat. Ann. § 951 *et seq.* (the "PHRA"),

against Defendant, Delta Airlines, Inc. ("Delta" or "Defendant"). Delta filed a motion for

summary judgment, Lee has responded and the motion is now before the Court.

### II.    STATEMENT OF THE CASE

   Delta, an airline carrier located in Atlanta, Georgia, offers a frequent flyer program to its

customers known as the SkyMiles Frequent Flyer Program ("SkyMiles"). Amended Complaint

("Am. Cmplnt.") ¶ 6; Defendant's Statement of Material Undisputed Fact ("Def. SMUF") ¶ 3.

Lee, an adult African-American, achieved Platinum Medallion priority status under Delta's

SkyMiles program on or about September 5, 2011. Def. SMUF ¶ 1. Subject to the terms and

conditions of the SkyMiles program, and based upon his Platinum status, Lee enjoyed, *inter alia*,

the following benefits: (1) priority check-in; (2) priority boarding; and (3) expedited baggage

service. Def. SMUF ¶ 4; Plaintiff's Response to Statement of Undisputed Facts ("Pl. SUF") ¶ 4 and Exhibits 5 and 7.

On May 24, 2012, Lee was travelling from Pittsburgh to Atlanta on Delta flight DL 2065 with Shay Mooney ("Mooney"), a Caucasian business companion. Def. SMUF ¶¶ 9 & 10. Lee and Mooney arrived at Pittsburgh International Airport and proceeded to the Delta self-serve check-in kiosk, where Lee checked in for himself and Mooney. Def. SMUF ¶¶ 11 & 12. The Delta ticket check-in area that morning consisted of a combined Special Services/Sky Priority line and a general ticketing line, separated by a series of self-serve check-in kiosks. Def. SMUF ¶¶ 5 & 6. There was also a baggage drop line for SkyMiles priority members, which was roped off. Pl. SUF ¶ 5.

Lee's luggage consisted of a book bag and a large duffel bag, while Mooney carried a small roll carry-on and a guitar in a hard case. Def. SMUF ¶¶ 16 & 17. Lee checked in Mooney's guitar under Lee's name with the intention of checking Mooney's guitar with Lee's duffle bag at the Delta ticketing counter. Def. SMUF ¶ 18. Lee checked in at the kiosk at 4:43 a.m., and checked in on behalf of Mooney at 4:44 a.m. Def. SMUF ¶¶ 13 & 14. Lee and Mooney then entered the Special Services/Sky Priority line, where they stood behind a group of travelers whom Lee believed to be a family of between two (2) and four (4) individuals. Def. SMUF ¶¶ 19 & 20.

The family was traveling internationally and was in need of special services as there was a ticketing issue that was going to take some time to resolve. Def. SMUF ¶ 24. Another Caucasian male entered the Special Services/Sky Priority line behind Lee and Mooney. Def. SMUF ¶ 26. After waiting in the Special Services/Sky Priority line for about a minute and a half, Mooney tapped Lee on the shoulder and said, "I think she's talking to you." Lee Deposition ("Lee Depo."), p. 27, ln. 7-15. Delta agent, Carrie Palmer ("Palmer"), who was assigned to the

2

kiosk area that morning, was aware of the family with the ticketing issue and asked Lee, "Are you checking a bag?" Def. SMUF ¶¶ 26 & 40; Lee Depo. p. 27, ln. 16-17. Lee replied in the affirmative and Palmer said, "Well, you can come over here", and gestured to the general ticketing line. Def. SMUF ¶¶ 35, 36 & 37; Lee Depo. p. 27, ln. 18-19. Lee did not object or tell Palmer that he was a Platinum Medallion SkyMiles member, he simply responded, "Okay", and he and Mooney walked over to the general ticketing line. Def. SMUF ¶ 39. Lee testified that upon entering the general ticketing line, there were four or five people in front of him, however, he has no knowledge whether or not those individuals were SkyMiles members. Def. SMUF ¶¶ 45 & 46.

While standing in the general ticketing line, Lee observed Palmer interact with a Caucasian male at the check-in kiosk and then escort him to the front of the general ticketing line. Def. SMUF ¶¶ 51 & 52. Immediately thereafter, Lee dropped his bags with Delta desk agent Cheryl McKeever ("McKeever"). Def. SMUF ¶¶ 55 & 56. Lee asked McKeever, "What is that about?" referring to the Caucasian male, and McKeever stated, "He's Diamond," referring to his status as a Diamond Medallion SkyMiles member. Def. SMUF ¶¶ 57 & 58. Lee then informed McKeever that he was Platinum Medallion SkyMiles member. Def. SMUF ¶ 59. Lee dropped his bags at the counter at 4:49 a.m., and noticed that the Caucasian male that had been behind him in the Special Services/Sky Priority line, was still standing at the front of the line awaiting his turn with a Delta desk agent. Def. SMUF ¶¶ 61 & 62.


III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled

to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994). ).

# IV. DISCUSSION

Lee contends that he was denied the benefits of his Platinum Medallion SkyMiles'

membership , including but not limited to: (1) use of the priority lines; (2) faster check-in; and

(3) expedited baggage service, based upon his race. Section 1981 provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts[1], to sue, be parties,
> give evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981(a).

A successful § 1981claim requires proof of intentional discrimination. *General Building

Contractors Association v. Pennsylvania*, 458 U.S. 375, 389 (1982); Croker v. Boeing Co., 662

F.2d 975, 988 (3d Cir. 1981). However, because of the evidentiary difficulties involved in

proving discriminatory intent, the Court of Appeals for the Third Circuit has held that summary

judgment motions in § 1981 cases are governed by the well-known burden shifting provisions

laid down in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and refined in *Texas

Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). *See Chauhan v. M.

Alfieri Co.*, 897 F.2d 123, 126-127 (3d Cir. N.J. 1990); *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-

182 (3d Cir. 2009) (noting that "the substantive elements of a claim under Section 1981 are

generally identical to the elements of an employment discrimination claim under Title VII").

Accordingly, Lee must first establish a *prima facie* case of discrimination by demonstrating that:

---

[1]     Under the statute, "the term 'make and enforce contracts' includes the making, performance,
modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,
and conditions of the contractual relationship." *See* 42 U.S.C. § 1981(b).

(1) he is a member of a racial minority; (2) Defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in Section 1981. *Lewis v. J.C. Penney Co.*, 948 F. Supp. 367, 371 (D. Del. 1996); *see also Bailey v. Harleysville Nat'l Bank & Trust Co.*, 2005 U.S. Dist. LEXIS 17527, *14-*15 (E.D. Pa. Aug. 22, 2005). Upon a *prima facie* showing by Plaintiff, the burden shifts to Delta to assert a "legitimate, nondiscriminatory" reason for its actions, which Plaintiff may rebut with evidence of pretext. *See McDonnell Douglas*, 411 U.S. at 802.

Because Lee is unable to establish either the second or third element set forth above, his claim fails as a matter of law. To satisfy the second *prima facie* element, Lee must allege facts which would establish that Delta's actions in this matter were acts of intentional racial discrimination, or would support an inference to that effect. *Ackaa v. Tommy Hilfiger Co.*, 1998 U.S. Dist. LEXIS 3570 *8-*9 (E.D. Pa. 1998). The discriminatory intent necessary for a valid §1981 claim can manifest in disparate impact, departure from procedural norms, a history of discriminatory conduct, or other relevant facts, but may not be established by conclusory allegations of generalized racial bias. *Flagg v. Control Data*, 806 F. Supp. 1218, 1223 (E.D.Pa. 1992).

Lee argues that he was the only person in the Special Services/Sky Priority line singled out and directed to the back of the general check-in line. At the time Lee and Mooney left the Special Services/Sky Priority line there was only one other person, a Caucasian male, in the line. Moreover, Lee was the next person in line waiting to be serviced, so it did indeed make sense for him to be invited to enter the faster moving general check-in line. Lee, in fact, received a faster check-in than the Caucasian male behind him in the Special Services/Sky Priority line. If Palmer had ignored Lee and moved the Caucasian customer behind him into the faster moving general check-in line, and such customer had proceeded through the line prior to Lee being serviced in

the Special Services/Sky Priority line, wouldn't Lee have felt such conduct was also discriminatory?

The facts of record do not support a finding of intentional discrimination. It is undisputed that Lee was standing in the Special Services/Sky Priority next in line behind a family that had ticketing issues. SMUF ¶¶ 19, 20 & 24. Palmer, the Delta agent at the self-serve kiosks, was aware of the family's ticketing issues. SMUF ¶ 40. After waiting approximately a minute and a half in line, Lee was approached by Palmer who asked if he was checking a bag. Def. SMUF ¶ 20; Lee Depo. p. 27, ln. 16-17. Lee replied in the affirmative and Palmer said, "Well, you can come over here", and gestured to the general ticketing line. Def. SMUF ¶¶ 35, 36 & 37; Lee Depo. p. 27, ln. 18-19. Lee, without protest, then voluntarily left the Special Services/Sky Priority line and entered the general check-in line. Lee testified that upon entering the general ticketing line, there were four or five people in front of him[2], however, he has no knowledge whether or not those individuals were SkyMiles members. Def. SMUF ¶¶ 45 & 46. Approximately three and a half minutes later, Lee dropped his bags at the Delta counter[3].

Lee further contends that Palmer violated Delta's practice/policy to identify and place SkyMiles priority members who were merely checking bags in front of the non-priority members through a separate SkyMiles priority baggage drop line. In support, Lee testified that he observed

---

[2]  Palmer, however, testified that there were no passengers in line, but there were passengers being serviced at the Delta counter. Palmer Deposition p. 24, ln. 1-21; p.30, ln. 2-18.

[3]  The undisputed evidence indicates that Lee checked in at the kiosk at 4:43 a.m., and checked in on behalf of Mooney at 4:44 a.m. Def. SMUF ¶¶ 13 & 14. He waited in the Special Services/Sky Priority line approximately one and a half minutes before moving into the general check-in line. Lee Depo. p. 27, ln. 16-17. Lee dropped his bags at the counter at 4:49 a.m. Def. SMUF ¶ 62.

Palmer interact with a Caucasian male at the check-in kiosk, escort him to the SkyMiles priority baggage drop line, remove the rope, and allow the customer to enter.  Pl. SUF ¶¶ 95-98.  Lee argues that Palmer should have identified him as a SkyMiles member because he was standing in the priority line or asked him if he was a SkyMiles member, then escorted Lee to the SkyMiles priority baggage drop line as she did for the above-mentioned Caucasian customer.

There is no evidence, however, that there was a departure from Delta's practice or procedures.  Delta Manager Scott Branderhorst ("Branderhorst") testified that it was Delta's practice to place SkyMiles priority members in front of the non-priority customers in the bag drop line only if the priority customer made such a request. Specifically, Branderhorst testified:

> Q.   On or about May 24th, 2012, was it the practice of the Delta representatives to take Priority members and place them in the front of the bag drop line in front of the non-Priority customers?
>
> A.   If requested.
>
> Q.   When you say "if requested," if requested by who?
>
> A.   By the customer. What would happen was if it was longer than five minutes, we would start to open this line up if we knew they were Sky Priority people. If we knew that there was minimal wait, we would not move them there, except once in a while we would get someone that says, "I'm a Diamond flyer."
> Then we say, "Sure. We'll get you right in here."
> So we do try to accommodate that, but I think it's – you know, in general most of our premium flyers are quite happy with the wait times that we have. It's not extensive.

Branderhorst Deposition p. 13, ln. 11-25; p. 14, ln. 1-4.  In a statement regarding the incident, Palmer testified that the SkyMiles member in fact made such request:

> Mr. Lee and his companion chose to move over to the bag drop line. As they were in line, I was continuing to assist passengers on the kiosk. I helped a Diamond passenger obtain his boarding card. I noticed on the boarding card that he was a Diamond and he asked if there was a Priority Bag Drop line. I took him to the Priority Bag Drop line, unhooked the rope and let this Diamond passenger into the Priority Line. It was at this point in time that Mr. Lee and his companion were next up in the baggage drop

8

> line for baggage check in. Mr. Lee saw me escort the other Diamond
> passenger into line and at that point Mr. Lee asked "what is this line for?"
> I told him that it was for Medallions who are dropping their baggage off.
> Mr. Lee then proceeded to tell me that he was a Medallion as well. I
> apologized to Mr. Lee and told him that I was unaware of his status. Prior
> to this exchange, Mr. Lee had not identified himself as a Medallion. At
> this point when Mr. Lee and myself were conversing on the subject, he
> was next in line and was called to the counter by Cheryl McKeever for his
> baggage drop.

Lee Exhibit 8.  Notwithstanding, the Diamond customer being placed in the SkyMiles priority

bag drop line, Lee and Mooney were serviced nearly simultaneously with the Diamond

customer[4].  *See* Palmer Depo, p. 29.

The evidence of record relied upon by Lee fails to support a finding of intentional

discrimination.  Lee is unable to show disparate impact as he cleared the baggage drop line in

three and a half minutes; he received faster service than the Caucasian male behind him in the

SkyMiles priority line, and service almost simultaneous to the Diamond customer escorted to the

SkyMiles priority bag drop line.  Based upon the testimony of Branderhorst, Delta did not depart

from their procedural norms in servicing Lee on May 24, 2012. Further, Lee is unable to show

that Delta has a history of discriminatory conduct.  Accordingly, Lee has failed to establish the

second element required to support a *prima facie* case of discrimination under § 1981.

In addition, Lee is unable to show that he was denied contractual rights, specifically the

benefits of his Platinum Medallion SkyMiles' membership, including but not limited to: (1) use

of the priority lines; (2) faster check-in; and (3) expedited baggage service.  There is no evidence

that Lee was denied the use of the priority lines.  Lee was in the Special Services/Sky Priority

---

[4]   Because the Court finds that this incident is neither determinative to establish a prima facie
case nor evidence of pretext, Lee's alternate request to amend the complaint shall be denied as
futile.

line, was offered the chance to move to a faster moving line, did so, and never requested that the SkyMiles priority bag drop line be opened for him.

With regard to the "faster check-in" and "expedited baggage service," there is no record evidence that would convince a trier of fact that he did not receive such benefits. Because the terms "faster" and "expedited" are not specific terms, they must be construed as what would be reasonable under the circumstances. *See ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 667 (3d Cir. 1998). On May 24, 2012, Palmer testified that it was a "busy early morning" with multiple Delta flights, and many passengers checking in. Palmer Depo. p. 22, ln. 1-3. The undisputed evidence indicates that Lee checked in at the kiosk at 4:43 a.m., and checked in on behalf of Mooney at 4:44 a.m. Def. SMUF ¶¶ 13 & 14. He waited in the Special Services/Sky Priority line approximately one and a half minutes before moving into the general check-in line. Lee Depo. p. 27, ln. 16-17. Lee dropped his bags at the counter at 4:49 a.m. Def. SMUF ¶ 62. Clearing the check-in and baggage drop lines in a total of six (6) minutes during a busy morning is reasonable under the circumstances and falls woefully short of a denial and/or impairment of the benefits of Lee's SkyMiles priority membership.

Nonetheless, assuming, arguendo, that Lee was able to establish a *prima facie* case, the burden of production shifts to Delta to articulate some legitimate, nondiscriminatory reason for its actions that morning. *See McDonnell Douglas*, 411 U.S. at 802. Delta can satisfy its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for offering Lee the opportunity to move to the general ticketing line. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)). Delta "need not prove that the tendered reason actually motivated [its] behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the Plaintiff." *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253). This is a

relatively light burden, and Delta's contention that its motivation was to move all passengers through the check-in and baggage drop process as quickly as possible certainly permits a conclusion that there was a nondiscriminatory reason for its actions.

In order to create a genuine issue of material fact as to whether the proffered reason is pretextual, Lee must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Lee must do more than show that Delta's proffered reason was wrong, he must "present evidence contradicting the core facts put forward by [defendant] as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). Lee must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that [defendant] did not act for [the asserted] non-discriminatory reasons.'" *Fuentes v. Perskie*, 32 F.3d at 765 (*citing Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993); *Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 128 (3d Cir. 1990)).

After a comprehensive review of the record, as well as Lee's well-crafted arguments, this Court is unable to find any evidence from which a factfinder could reasonably find that Delta's reasons for its actions during Lee's check-in and baggage drop processes were either false or pretextual. Because there is no evidence that race was a motivating factor in this instance, Lee's claim under § 1981 fails as a matter of law.

Based on the above, Lee's PHRA claim fails as well. Pennsylvania courts have construed the protections of Title VII and the PHRA "interchangeably," therefore the proper analysis of claims thereunder are identical. *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 105 (3d Cir. Pa. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001)). Because the Third Circuit has held that summary judgment motions in § 1981 cases are governed by the burden shifting provisions of *McDonnell Douglas Corp.*, the analysis of Lee's PHRA claim parallels this Court's analysis set forth above. Based thereon, the Court finds that no material issue of fact exists as to whether Lee's rights under the PHRA were violated.

## V.    CONCLUSION

The Court finds that there are no material facts in dispute, Lee is unable to show that Delta violated his rights under § 1981 or the PHRA. Accordingly, Delta's motion for summary judgment shall be granted. An appropriate order will follow.


s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Joshua M. Bloom, Esquire
       Tiffany R. Waskowicz, Esquire
       Joseph F. McDonough, Esquire
       Christian Antkowiak, Esquire

       (*Via CM/ECF Electronic Mail*)